Orfa I. Torres, appellant, v.
Benjamin H. Morales, appellee.
___ N.W.2d ___

Filed March 7, 2014.    No. S-13-106.

1.  **Injunction: Judgments: Appeal and Error.** A protection order pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2012) is analogous to an injunction. Thus, the grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
2.  **Constitutional Law: Judgments.** Because the intrusion on a respondent's liberty interests is limited, the procedural due process afforded in a protection order hearing is likewise limited.
3.  **Judges.** A judge must be careful not to appear to act in the dual capacity of judge and advocate.
4.  **Judges: Trial.** A judge must be impartial, his or her official conduct must be free from even the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action.
5.  **Judges: Recusal: Presumptions.** A party alleging that a judge acted with bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality.

Appeal from the District Court for Lancaster County: Steven D. Burns, Judge. Affirmed in part, and in part reversed.

Mark T. Bestul, of Legal Aid of Nebraska, for appellant.

No appearance for appellee.

Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Per Curiam.

## INTRODUCTION

Orfa I. Torres sought a domestic abuse protection order against Benjamin H. Morales. After a show cause hearing, the district court dismissed the case and taxed the costs to Torres. Torres appeals. We affirm in part, and in part reverse.

## BACKGROUND

The Protection from Domestic Abuse Act, Neb. Rev. Stat. § 42-901 et seq. (Reissue 2008 & Cum. Supp. 2012), permits

a victim of domestic abuse to file a petition and affidavit seeking a protection order pursuant to § 42-924.

On January 7, 2013, Torres applied for a protection order against her boyfriend, Morales. Torres described three incidents that she felt warranted the protection order. The district court issued an order to show cause. On January 17, the court held a show cause hearing. Torres appeared with counsel; Morales appeared pro se. The district court judge first called Torres to the witness stand and questioned her regarding the incidents cited in her affidavit.

The first incident Torres described involved an allegedly intoxicated Morales yelling at Torres and her son on Christmas Eve of 2012. Torres testified that after their disagreement, she tried to retrieve her things from Morales' grandparents' home where they had been visiting, but that Morales blocked her in the hallway. Torres pushed Morales, and Morales grabbed Torres' shirt, causing her to fall on top of him. Torres then spit on Morales.

The second incident took place approximately 1½ weeks after the first. Torres described the incident generally as Morales' constantly yelling and calling her names while she tried to avoid him.

The final incident cited by Torres occurred approximately a year prior to the first incident, when Torres was 3 months' pregnant. Torres testified that Morales had been drinking alcohol and that the pair had been arguing. Morales attempted to leave, and, concerned about him driving while intoxicated, Torres came up behind him and held the door closed with her hand. Morales fell backward, on top of Torres. Torres testified that Morales elbowed her in her ribs, so she bit him. Concerned about her pregnancy, Torres went to the emergency room the next morning.

When Torres finished describing the three incidents, the judge called Morales to testify and asked him about the same incidents. Morales recalled the first two events similarly but stated that he was not drinking during the second incident.

At one point during his testimony, Morales admitted, "We have a lot of verbal arguments, and, you know, this might be a good thing for both of us, this order to go in effect."

The court then asked Morales whether he was opposing the order. Morales said that he was not. The court asked Morales if he understood the consequences of the court's issuing the order, and Morales asked what the consequences were. The court listed potential legal consequences, including a prohibition on possessing weapons and a potential effect on future child custody issues. Morales expressed concern that the protection order could possibly affect his job. The court then asked Morales to continue giving his version of the alleged incidents.

Morales described the third incident similarly as well, but stated that he did not recall elbowing Torres and was only pushing her so that he could get out the door to leave.

When Morales finished testifying, the court vacated its order to show cause and dismissed the case. In its written order, the court required Torres to pay the costs of the action. Torres appeals.

## ASSIGNMENTS OF ERROR

Torres assigns, reordered, the following errors of the district court: (1) taxing the costs of the protection order to her without making findings by clear and convincing evidence that the statements in the petition and affidavit were false and that the order was sought in bad faith; (2) not allowing her counsel to participate in the proceedings, question Torres, or present any additional evidence; (3) not allowing her counsel to cross-examine Morales; (4) providing legal advice to Morales; (5) failing to inquire whether the actions of Morales caused her bodily injury or placed her in fear of bodily injury; (6) denying Torres a hearing before an impartial decisionmaker; and (7) failing to issue a domestic abuse protection order.

## STANDARD OF REVIEW

[1] A protection order pursuant to § 42-924 is analogous to an injunction. Thus, the grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that

the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[1]

## ANALYSIS

*Costs of Action.*

In Torres' first assignment of error, she asserts that the district court erred in taxing costs of the action to her without making findings by clear and convincing evidence that the statements contained in her petition and affidavit were false and that the protection order was sought in bad faith.

Section 42-924.01 states in part:

> Fees to cover costs associated with the filing of a petition for a protection order or the issuance or service of a protection order seeking only the relief provided by the Protection from Domestic Abuse Act shall not be charged, except that a court may assess such fees and costs if the court finds, by clear and convincing evidence, that the statements contained in the petition were false and that the protection order was sought in bad faith.

In its order dismissing the case, the district court did not state that it found the facts stated in Torres' affidavit to be untrue by clear and convincing evidence. Furthermore, because Morales described the incidents similarly, our review of the record does not support a finding that the facts stated were untrue.

Black's Law Dictionary defines bad faith as "[d]ishonesty of belief or purpose."[2] No evidence was presented suggesting that Torres sought the order for any purpose other than protection for herself or her children. Morales agreed that the parties often did not get along. Even though the district court found the incidents described did not warrant a protection order, it does not appear that the order was sought in bad faith.

Without findings that the facts in the affidavit were not true or that the order was sought in bad faith, the district court erred in taxing the costs of the action to Torres.

---

[1] *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999).

[2] Black's Law Dictionary 159 (9th ed. 2009).

*Participation of Counsel.*

In Torres' second and third assignments of error, she asserts that the court erred in not allowing her counsel to participate in the proceedings, ask questions of either party, or present any additional evidence.

[2] We have said that because the intrusion on a respondent's liberty interests is limited, the procedural due process afforded in a protection order hearing is likewise limited.[3]

In *Elstun v. Elstun*,[4] the trial court explicitly denied requests from counsel for the opposing party to question his client and cross-examine the appellant during a show cause hearing for a protection order. In that case, we quoted Neb. Rev. Stat. § 27-614(1) (Reissue 2008), which states that "[t]he judge may, on his own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." We therefore found the appellant's statutory right to cross-examine the witnesses had been violated. Similarly, in *Hronek v. Brosnan*,[5] the Nebraska Court of Appeals found the appellant's due process rights were violated when the court made a blanket statement that it was not going to allow counsel to examine or cross-examine witnesses.

In this case, there was no request by either party to question either witness or present additional evidence. Without such a request, or any indication from the court that such a request would be denied, we cannot find that Torres' right to cross-examine Morales was violated.

The district court did not err by questioning Torres and Morales at the hearing, and absent a request from counsel to participate in the hearing, the court did err in not permitting Torres' counsel to question Morales or present additional evidence.

---

[3] *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). See, also, *Hronek v. Brosnan*, 20 Neb. App. 200, 823 N.W.2d 204 (2012).

[4] *Elstun, supra* note 1.

[5] *Hronek, supra* note 3.

*Advising Pro Se Litigant.*

In Torres' fourth assignment of error, she asserts that the district court erred in providing legal advice to Morales.

[3] We have held that "[a] judge must be careful not to appear to act in the dual capacity of judge and advocate."[6]

Torres argues that when Morales stated the protection order might be a good idea and that the court advised Morales of the consequences of having a protection order issued, "[t]he court seemed to advocate that [Morales] change his mind . . . ."[7]

In *Sherman v. Sherman*,[8] the Court of Appeals addressed the trial judge's actions regarding a pro se petitioner. In that case, the petitioner applied for a domestic abuse protection order, but at the hearing, the court, sua sponte, asked the bailiff to retrieve a harassment protection order and stated that the petitioner wanted to amend her petition. The Court of Appeals held that

> when presented with a situation in which an ex parte domestic abuse protection order has been entered, but at the hearing, it becomes apparent that the matter may more properly be considered as a harassment protection order, the judge should explain the requirements for both domestic abuse and harassment protection orders and allow the petitioner to choose which theory to pursue.[9]

Similarly, there are times when trial judges must inform a party of the legal consequences of an order without directing the party's decision.

In this case, the court did not tell Morales whether to contest the protection order, it simply advised him of the consequences of the order. Torres' fourth assignment of error is without merit.

---

[6] *Jim's, Inc. v. Willman*, 247 Neb. 430, 434, 527 N.W.2d 626, 630 (1995), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

[7] Brief for appellant at 17.

[8] *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010).

[9] *Id.* at 347, 781 N.W.2d at 620.

*Questions From Court.*

In Torres' fifth assignment of error, she asserts that the district court erred in failing to inquire whether the actions of Morales caused her bodily injury or placed her in fear of bodily injury.

Under § 42-903(1), for the order to be issued, Torres needed to prove that Morales had subjected her to domestic abuse, defined as one or more of the following between household members: "(a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument; (b) Placing, by means of credible threat, another person in fear of bodily injury; [or] (c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318[.]"

The judge told Torres he was going to allow both witnesses an opportunity to give their side of the story for each of the incidents provided in the petition and affidavit. Aside from a few clarification questions, the judge allowed Torres to provide a narrative of each of the events. The judge similarly allowed Morales to provide a narrative of the events.

At one point, the judge asked Morales, "So on January 5th, I take it — I haven't heard from either one of you that there was any physical contact or threats of any nature made by anybody?" Even upon hearing this statement, Torres' counsel did not ask the court if he could question either Torres or Morales.

Torres does not cite any legal authority for the proposition that the judge was required to ask any certain question, rather than to allow her to provide, in narrative form, details for the events she felt warranted the order. Torres' counsel did not ask the court if he could ask additional questions of Torres. Furthermore, the questions suggested in Torres' brief—whether Torres was injured or placed in fear of injury—would not have been sufficient to warrant a protection order under § 42-903, because that section requires intentional injury or credible threats. Torres' fifth assignment of error is without merit.

*Impartial Decisionmaker.*

In Torres' sixth assignment of error, she argues that the totality of this case—questioning by the judge, advising Morales, failing to ask whether Torres was injured or put in fear of bodily injury, and taxing costs to Torres—indicates that Torres was denied an impartial decisionmaker.

[4,5] We have held, "[a] judge must be impartial, his or her official conduct must be free from even the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action."[10] "[A] party alleging that a judge acted with bias or prejudice bears a heavy burden of overcoming th[e] presumption [of judicial impartiality]."[11]

Our analyses of the other assignments of error in this case do not support a finding of partiality. The judge had statutorily granted discretion to elect to question witnesses, and counsel did not request leave to ask any additional questions. The judge informed Morales of the legal consequences of the order without telling him how he should proceed in the case. The judge asked Torres to describe the events she felt warranted a protection order and was not required to ask whether she was injured or put in fear of bodily injury. Although the judge improperly taxed costs to Torres, this alone is not enough to overcome a presumption of impartiality. Torres' sixth assignment of error is without merit.

*Protection Order.*

In Torres' seventh assignment of error, she asserts that the district court erred in failing to issue a domestic abuse protection order based on the evidence presented in the case.

We have stated that even on de novo review, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to

---

[10] *Jim's, Inc. v. Willman, supra* note 6, 247 Neb. at 434, 527 N.W.2d at 630.

[11] *In re Interest of Jamyia M.*, 281 Neb. 964, 976, 800 N.W.2d 259, 268-69 (2011).

the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[12]

For the order to be issued, Torres would have needed to provide at least some evidence of abuse as defined under § 42-903(1). Based on her own testimony, the only bodily harm inflicted on Torres was what appears to have been an accidental elbowing—this certainly falls short of the "intentionally and knowingly" requirement of subsection (1)(a). Torres did not present any evidence that Morales threatened her as required by subsection (1)(b). And, finally, Torres did not present any evidence of any nonconsensual sexual contact as required by subsection (1)(c).

The district court did not err in failing to issue the protection order.

## CONCLUSION

For the foregoing reasons, the order dismissing the cause is affirmed, but the portion of the order requiring Torres to pay the costs of the action is reversed.

AFFIRMED IN PART, AND IN PART REVERSED.

HEAVICAN, C.J., participating on briefs.

---

[12] *Elstun, supra* note 1.

---

SOURCEGAS DISTRIBUTION LLC, A DELAWARE LIMITED
LIABILITY COMPANY, APPELLANT, V. CITY OF HASTINGS,
NEBRASKA, A MUNICIPAL CORPORATION, FOR AND
ON BEHALF OF THE BOARD OF PUBLIC WORKS
OF THE CITY OF HASTINGS, APPELLEE.

___ N.W.2d ___

Filed March 7, 2014.    No. S-13-239.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law that an appellate court independently reviews.

2. ____: ____. Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.